# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-295

**THOMAS VINCENT**

**VERSUS**

**NAPA AUTO PARTS AND SUPPLY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 01-08441
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, C.J., Sylvia R. Cooks, Billie Colombaro Woodard, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**PICKETT, J., JOINS THE OPINION OF THE COURT WITH RESPECT TO SECTIONS I, II, AND III.A., BUT DISSENTS WITH RESPECT TO SECTION III.B. FOR THE REASONS ASSIGNED BY JUDGE EZELL.**

**EZELL, J., DISSENTS AND ASSIGNS WRITTEN REASONS.**

**REVERSED AND RENDERED.**

**Robert Dean Hoover**
**1737 Oakdale Drive**
**Baton Rouge, LA 70810**
**Telephone: (225) 767-4880**
**COUNSEL FOR:**
**Defendant/Appellee - NAPA Auto Parts and Supply**

**Eugene A. Ledet, Jr.**
**RIVERS, BECK, DALRYMPLE & LEDET**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**Telephone: (318) 445-6581**
**COUNSEL FOR:**
**Plaintiff/Appellant - Thomas Vincent**

THIBODEAUX, Chief Judge.

In this workers' compensation matter, Thomas Vincent appeals a judgment denying him penalties and attorney fees against his employer, NAPA Auto Parts and Supply. Mr. Vincent claims that the workers' compensation judge erred in denying these awards for his employer's alleged failure to timely authorize an appointment with his doctor of choice and to authorize a diagnostic examination.

The workers' compensation judge was manifestly erroneous. We reverse and award a penalty of $2,000.00 each for the failure to authorize an appointment with Mr. Vincent's physician of choice and for the failure to authorize a diskogram. We also award attorney fees of $10,000.00 for work at both trial and appellate levels. The provision of these benefits was not prompt and was not reasonably controverted. La.R.S. 23:1203 and 1201(f)(2).

I.

**FACTS**

On May 7, 2001, Mr. Vincent was involved in a work-related accident while employed by NAPA Auto Parts. He began receiving workers' compensation benefits shortly thereafter. Following his injury, Mr. Vincent was treated by several physicians, including a chiropractor and two neurosurgeons. However, his pain failed to resolve. On September 26, 2001, counsel for Mr. Vincent sent a request to see Dr. John Cobb, an orthopedic specialist, to Myrna Cannon, the claims supervisor working on Mr. Vincent's case for NAPA's insurer. The letter was received on October 2, 2001. An appointment with Dr. Cobb was then authorized on November 14, 2001.

Dr. Cobb examined Mr. Vincent on December 10, 2001. He recommended that a diskogram be performed upon Mr. Vincent. His report and the request for the diskogram were received by Ms. Cannon on January 10, 2002. In

1

February, Blake Stevens, the vocational rehabilitation specialist assigned to Mr. Vincent's case, began to try to schedule an exam for a second opinion. Mr. Vincent was not seen for the second opinion until August 13, 2002, by Dr. Robert Po, who agreed with the diagnosis made by Dr. Cobb and the need for a diskogram. After a consultation with Mr. Stevens, a licensed vocation rehabilitation counselor, in which he was told of the possible dangers involved in a diskogram, which include paralysis, Mr. Vincent decided to forego the test and seek another means of diagnosis, specifically a repeat of an earlier MRI. Two weeks prior to the trial on this matter, Mr. Vincent changed his mind and became willing to undergo the diskogram. Authorization for the test was approved the day of trial.

In November 2001, Mr. Vincent filed a complaint with the Office of Workers' Compensation seeking penalties and attorney fees, claiming that NAPA failed to timely authorize the visit to Dr. Cobb. The complaint was later amended to assert that NAPA failed to timely authorize the diskogram requested by Dr. Cobb.[1] After the hearing on the matter, the workers' compensation judge found that the appointment with Dr. Cobb was authorized within sixty days of the request, making the authorization timely.[2] Accordingly, he denied penalties and attorney fees on that claim. The workers' compensation judge also found that NAPA was not unreasonable in seeking a second opinion as to the need for a diskogram and that the delay for the

_____

[1] Mr. Vincent also claimed that NAPA failed to timely notify him of a rehabilitation conference with Dr. Cobb and that NAPA failed to timely provide him with the report generated by Dr. Po after his examination. Mr. Vincent was ultimately rewarded $250.00 in penalties and $750.00 in attorney fees for the failure to provide Dr. Po's report and his claim based on the rehabilitation conference was denied. However, as neither of these issues were appealed, they need not be addressed further.

[2] The workers' compensation judge specifically mentioned in his oral reasons that no penalties or attorney fees were due because the requested appointment had been approved within sixty days, as if this were a bright line time limit for authorizing a medical exam, rather than noting the correct arbitrary or capricious standard.

authorization was also not unreasonable based on Mr. Vincent's own initial refusal to have the diskogram performed. From this decision, Mr. Vincent appeals.

## II.

## ISSUES

We shall consider whether:

(1)    the workers' compensation judge erred in finding that NAPA timely authorized the visit with Dr. Cobb;

(2)    the workers' compensation judge erred in finding that NAPA complied with their obligation to provide prompt medical care with regards to the diskogram; and,

(3)    the workers' compensation judge erred in failing to award penalties and attorney fees for the alleged violations.

## III.

## LAW AND DISCUSSION

### A.  Failure to Authorize Appointment With Physician of Choice

There is no factual dispute regarding the evidence on this issue. Mr. Vincent's attorney's letter to the adjuster requesting authorization to see Dr. Cobb was sent on September 26, 2001, and received by Ms. Cannon, the adjuster, on October 2, 2001. She reviewed the letter on October 3 and failed to communicate with Mr. Vincent's attorney until November 14, 2001—a lapse of six weeks. Ms. Cannon testified that she was familiar with Mr. Vincent's right to see Dr. Cobb and further acknowledged that he had not been seen by an orthopedist of his choice. Moreover, Ms. Canon did not question the accuracy of Mr. Vincent's medical records which she had in her possession.

*Authement v. Shappert Engineering*, 02-1631 (La. 2/25/03), 840 So.2d 1181, 1186, concluded that "[b]ased on this language [La.R.S. 23:1201(f))2)] a penalty and attorney fee can be imposed for the failure to authorize treatment except where 'the claim is reasonably controverted.'" *Authement* further explained:

> The employer is obligated to 'furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal.' LSA-R.S. 23:1203(a). Thus, we conclude that a failure to authorize treatment can result in the imposition of penalties and attorney fees *except when the claim is reasonably controverted. Depending on the circumstances, a failure to authorize treatment is effectively a failure to furnish treatment*.

*Id*. at 1187. (Emphasis supplied).

Moreover, "[o]ne purpose of the workers' compensation statute is to *promptly* provide compensation and medical benefits to an employee who suffers injury within the course and scope of employment. *Id*. at 1186-87. (Emphasis supplied). In this case, the failure to authorize an appointment with Dr. Cobb for six weeks was not prompt. We, therefore, assess a penalty of $2,000.00 and an attorney fee of $3,500.00 pursuant to La.R.S. 23:1201(f)(2).

## B. Failure to Authorize Diskogram

Dr. Cobb examined Mr. Vincent on December 10, 2001 and determined the need for a diskogram for which he requested authorization to perform. His request was received by the claims adjuster on January 10, 2002. Having received no response from NAPA, Mr. Vincent's attorney wrote to the claims adjuster on February 25, 2002, to again request authorization for the diskogram. Dr. Po saw Mr. Vincent for a second opinion at NAPA's request on July 11, 2002. Dr. Po concurred with the need for a diskogram and informed Mr. Stevens, the vocational rehabilitation

counselor, on August 13, 2002. Finally, in September 2002, Mr. Stevens called Mr. Vincent to discuss Dr. Po's findings. He summarized their conversation as follows:

> I advised Mr. Vincent about the diskogram and [advised him that] it's a delicate procedure and if [it is] not performed adequately . . . there could be medical complications such as paralysis or perhaps false positives that would show additional findings other than what an MRI or mylogram indicates.
>
> I told him that due to the delicate procedure, paralysis can occur [when the] dye is . . . shot into the . . . spinal cord.

When asked the following question, Mr. Stevens admitted that Mr. Vincent expressed his fears related to the diskogram procedure only after their telephone conversation in September.

> Q    All right. So if I understood your previous testimony correctly, from December 11 of 2001 through sometime in September of 2002 Mr. Vincent never voiced any concern over the diskogram, it was not until your conversation with him on the possibility of paralysis, correct?
>
> A    He had . . . requested a repeat MRI because he was fearful of the diskogram.
>
> Q    And that was after you told him about the paralysis, or during the same conversation?
>
> A    Certainly.

When Mr. Vincent was asked about the reservations he expressed about undergoing the diskogram procedure, he stated:

> Well, I was scared then at the time, sir. I mean, Blake [Stevens] had done talked to me and, like I say, it scared me, he said they had one that blowed up and, you know, paralyzed him and I mean I was scared.

Later, after talking with his counsel, Mr. Vincent changed his mind and asked him to get the diskogram procedure set up. Finally, NAPA's insurer authorized the diskogram on November 12, 2002, after Mr. Vincent's attorney filed an amended

5

petition alleging the delay in authorizing the diskogram on October 21, 2002. The trial was held on November 14, 2002.

Again, NAPA was unreasonable in failing to authorize a diskogram until ten months after the initial request was made by Mr. Vincent's treating physician, Dr. Cobb, and three months after that request was corroborated by NAPA's physician of choice, Dr. Po. The failure to authorize the diskogram is indeed a failure to authorize treatment, entitling Mr. Vincent to a penalty of $2,000.00 and an attorney fee in the amount of $3,500.00. La.R.S. 23:1201 and 1203(a); La.R.S. 23:1201(f)(2).

We award an attorney fee of $3,000.00 for work performed at the appellate level.

IV.

**CONCLUSION**

For the foregoing reasons, the judgment appealed from is reversed. A penalty of $2,000.00 each is assessed for the failure to authorize an appointment with Mr. Vincent's physician of choice and the failure to authorize a diskogram. Further, attorney fees of $3,500.00 is assessed for each violation in addition to an award of $3,000.00 for work done at the appellate level.

All costs are assessed against NAPA Auto Parts and Supply.

**REVERSED AND RENDERED.**

6

THOMAS VINCENT

VERSUS

NAPA AUTO PARTS AND SUPPLY

**EZELL, J., dissents**.

I respectfully disagree with the majority opinion and, for the following reasons, would affirm the decision of the trial court.

In *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (alteration in original), the supreme court clearly set out the standard of review for factual findings in workers' compensation matters as follows:

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulon/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, 93-1530 at p. 5, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

Louisiana Revised Statutes 23:1121(B) provides that employee shall have the right to select one treating physician in any field or specialty when injured in the course and scope of his employment. Furthermore, La.R.S. 23:1121(C)(emphasis

ours) provided at the time Vincent was injured:

> If the employer or insurer has not consented to the employee's request to select a treating physician or change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was *arbitrary and capricious*, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such physician's services.

Based on the evidence before him, the workers' compensation judge found that NAPA did not unduly delay Mr. Vincent in seeing Dr. Cobb. Although the workers' compensation judge seemingly applied an incorrect standard in reaching this conclusion[1], he clearly found that the seven-week time between the request and the approval was not unreasonable, arbitrary or capricious. Accordingly, the workers' compensation judge ruled that penalties and attorneys' fees would not be appropriate. I find nothing in the record which indicates NAPA's actions were arbitrary or capricious, or that the workers' compensation judge's findings were manifestly erroneous.

As for Mr. Vincent's claim that the workers' compensation judge erred in failing to award penalties and attorneys' fees for the delay in authorizing the diskogram, again, I disagree.

Myrna Cannon received Dr. Cobb's report requesting the test on January 10, 2002. In February, Blake Stevens began making attempts on behalf of NAPA to schedule a second opinion as to the necessity of this test. After several attempts were made with various doctors, Mr. Stevens finally arranged an examination with Dr. Po. After the need for the diskogram was confirmed by Dr. Po, a consultation with Mr.

---

[1] The workers' compensation judge specifically mentioned in his oral reasons that no penalties or attorneys' fees were due because the requested appointment had been approved within sixty days, as if this were a bright line time limit for authorizing a medical exam, rather than noting the correct arbitrary or capricious standard.

1

Stevens occurred in which Mr. Vincent was told of the possible dangers involved in a diskogram, including paralysis. Mr. Vincent decided to forego the test and seek another means of diagnosis. In fact, Mr. Vincent did not indicate that he desired the diskogram until two weeks prior to the trial. After he indicated that he had changed his mind and sought the diskogram, the test was approved shortly thereafter.

As noted by the workers' compensation judge in his oral reasons for judgment, Mr. Vincent himself declined the test, based on his fears of risks associated with the exam. The workers' compensation judge found that NAPA was not unreasonable in "seeking a second medical opinion to address the need for a diskogram" and that NAPA was not "unreasonable in not authorizing the diskogram until November of 2002, given the fact that Mr. Vincent himself declined having a diskogram [until] that time." The workers' compensation judge found that NAPA reasonably controverted Mr. Vincent's claim that the authorization for the diskogram was delayed in an arbitrary and capricious manner. The limited record in this matter contains no evidence which shows this finding to be manifest error.

Because NAPA was neither arbitrary nor capricious in authorizing either the visit to Dr. Cobb or the diskogram, NAPA should not owe Mr. Vincent penalties or attorneys' fees for its actions.

2