STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1001


CHERYL LAMBERT

VERSUS

BROOKSHIRE GROCERY COMPANY


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 03-05889
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.

**AFFIRMED AS AMENDED.**

Charles J. Foret
Stacy D. Saltzman
Briney & Foret
Post Office Drawer 51367
Lafayette, LA   70505
(337) 237-4070
COUNSEL FOR DEFENDANT/APPELLANT:
      Brookshire Grocery Company

Maria A. Losavio
Losavio Law Office, LLC
Post Office Box 12420
Alexandria, LA   71315
(318) 767-9033
COUNSEL FOR PLAINTIFF/APPELLEE:
      Cheryl Lambert

AMY, Judge.

In this workers' compensation dispute, the claimant-employee was injured while in the course and scope of her employment with the defendant grocery store. She filed a disputed claim for workers' compensation to recover temporary total disability benefits and penalties and/or attorney's fees for the defendant's failure to pay and/or timely authorize certain medical procedures. The workers' compensation judge found that the claimant proved that she was temporarily totally disabled and that she was entitled to indemnity benefits. The workers' compensation judge also ordered that the defendant pay multiple penalties, attorney's fees, and court costs. The defendant appeals, asserting several assignments of error. For the following reasons, we affirm as amended.

## Factual and Procedural Background

The claimant, Sheryl Lambert (Lambert)[1], was employed by the defendant, Brookshire Grocery Company (Brookshire), for eight years as a meat wrapper. According to Lambert, on July 21, 1998, she was loading cases of meat onto a cart when she "felt a snap and burning sensation." Lambert stated that she sustained injuries to her upper neck and left shoulder. She testified that she underwent a neck surgery in May 1999, but because there was non-union at the C6-7 level, a second surgery was performed in May 2001. Lambert stated that neither of these surgeries was completely successful in alleviating her pain. She testified that not only did her previous symptoms return, she also experienced new problems, which prompted her to seek treatment with several physicians in different medical fields.

---

[1] The claimant's name appears both as "Cheryl" Lambert and "Sheryl" Lambert in the record of these proceedings. Based upon the claimant's signature contained in the record, we refer to the claimant as Sheryl Lambert in our discussion.

Lambert testified that in the years following her accident, she returned to work on three occasions with her first job being in the seafood department. She stated that she stopped working this position because her second surgery was imminent. Her next position consisted of stocking the lunch meat case. Lambert testified that this work aggravated her arms, so she was removed from that position. Lastly, according to Lambert, she was a cashier from December 2002 to June 2003. Lambert testified that working as a cashier "aggravate[d] the muscle in the upper part of my neck on my left side, my arm -- the pain from the repetitious going back and forth scanning the groceries." She explained that because the utility clerks were not always available to assist her in lifting heavy objects, she had to lift them and this caused her considerable pain. Lambert also testified that standing for two or three hours at a time caused her back pain.

Lambert testified that she quit working as a cashier in June 2003 "[b]ecause the pain had just gotten so bad that I couldn't stand it anymore. I just couldn't deal with it. I would go home in the evenings. I couldn't hardly lift my arms after working. I just -- I couldn't do it. I just -- I couldn't deal with the pain anymore." She further testified that although Brookshire repeatedly offered her an express cashier position from June 2003 to October 2005, she has not worked in any capacity since June 2003. Lambert, stated that despite her disability, Brookshire terminated her indemnity benefits on June 21, 2003.

The record indicates that on August 19, 2003, Lambert filed a Disputed Claim for Compensation Form on several grounds including, but not limited to: "Extent and duration of disability[;] Non-payment, incorrect payment and/or untimely payment of indemnity benefits[;] Failure to provide authorization for medical treatment[;] Non-

2

payment and/or untimely payment of medical and travel related expenses[;] The arbitrary withholding of consent for recommended treatment[; and] Penalties and attorney's fees."

Following a trial, the workers' compensation judge issued an order,[2] in which he found that "Lambert is temporary and totally disabled since June 21, 2003 through present" and that indemnity benefits were to be reinstated "at the rate of $328.60 per week with interest from date due for the period of June 22, 2003 through present and continuing until plaintiff, Sheryl Lambert, is no longer disabled[.]"

The workers' compensation judge ordered Brookshire to authorize a muscle stimulator and to pay R.S. Medical, the provider of the muscle stimulator. It was also ordered to pay a mileage shortage in the amount of $1.08, $12,000.00 in attorney's fees, and $1,975.40 in court costs. Furthermore, Brookshire was assessed with multiple penalties: (1) a $2,000.00 penalty for the failure to authorize the muscle stimulator; (2) a $2,000.00 penalty for the failure to pay and/or timely pay R.S. Medical; (3) a $2,000.00 penalty for failure to timely pay Christus St. Frances Cabrini Hospital's bill; (4) a $2,000.00 penalty for failure to timely authorize medical treatment by Dr. Bradley Bartholomew; (5) a $2,000.00 penalty for failure to timely authorize behavioral pain management; (6) a $2,000.00 penalty for failure to timely authorize psychophysiologic therapy; (7) a $2,000.00 penalty for failure to timely authorize a selective nerve block; and (8) a $2,000.00 penalty for failure to pay the correct mileage reimbursement.

Brookshire appeals the workers' compensation judge's finding that Lambert is temporarily totally disabled. It also appeals the finding that it acted arbitrary and capricious in terminating Lambert's benefits and that its failure to reinstate benefits

_____

[2] For ease of discussion, we only focus on the pertinent sections of the order that are subject to this appeal.

was unreasonable. Furthermore, Brookshire questions the awarding of multiple penalties for failure to (timely) authorize medical treatment and for failure to (timely) pay medical expenses. Lastly, Brookshire questions the attorney's fees and court costs awarded.

## Discussion

*Disability*

Brookshire argues that the workers' compensation judge "erred in ruling Sheryl Lambert sustained her burden of proving by a preponderance of the evidence that she is temporarily totally disabled and has been since June [] 2003, as a result of a work accident and is therefore entitled to temporary total disability benefits." It asserts that Lambert's treating neurosurgeon, Dr. Bartholomew, indicated that she "was able to work as a cashier with restrictions of 'no work activity with arms above shoulders and sedentary to light duty lifting restrictions.'" Nevertheless, Brookshire alleges Lambert declined its offers to return to work in modified positions.

Louisiana Revised Statutes 23:1221(1) provides in pertinent part:

(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

The trial court's determination that the employee has or has not met her burden of proof will not be overturned absent manifest error. *Williams v. Ravare Masonry Co.,* 00-329 (La.App. 3 Cir. 10/4/00), 774 So.2d 254, *writ denied*, 01-377 (La. 3/30/01), 788 So.2d 1194. Pursuant to La.R.S. 23:1221(1)(c), "the employee-

4

claimant must show, by clear and convincing evidence, that [he or] she is physically unable to engage in any kind of employment." *Alexander v. Autozone, Inc.*, 04-871, p. 6 (La.App. 3 Cir. 12/8/04), 889 So.2d 366, 371. Clear and convincing proof requires "'objective medical evidence of [the] disabling condition' causing his 'inability to engage in any employment.' Thus, the claimant must provide objective, expert testimony as to [his or her] medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to fulfill this standard." *Id.* at 372.

The record indicates that Lambert visited several physicians for treatment of her injuries. Lambert was first treated by Dr. G. Andrew Wilson, a neurosurgeon, for neck and shoulder pain. According to the exhibits submitted into evidence, Dr. Wilson diagnosed Lambert as having a herniated disc in her neck and recommended that she have surgery. Lambert testified that she went to Dr. James Ricciardi, an orthopedic surgeon, because she "wanted a second opinion before [she] had the first surgery." Dr. Ricciardi agreed with Dr. Wilson's recommendation, and in May 1999, he performed anterior cervical surgery on the C5-6 and C6-7 levels of Lambert's neck.

Lambert testified that after the surgery, she had pain in her neck that radiated into her arm and hand. When she told Dr. Ricciardi of her complaints, he took x-rays and performed an MRI, after which he opined that there was nonunion at the C6-7 level. Because Lambert's symptoms became progressively worse, she underwent a second surgery with Dr. Riciarrdi in May 2001 for a revision of the pseudoarthrosis at C6-7. According to Lambert's testimony, after the second surgery, not only did her previous symptoms return, but she also "started having severe memory problems that -- a funny-like feeling would come over me that would make me want to black out, cause me to start trembling."

In a letter written to Brookshire dated October 16, 2001, Dr. Ricciardi stated that although Lambert had new complaints, "most of her neck pain was gone." Dr. Ricciardi indicated that if he released her to work, he "would restrict her from overhead lifting. She would do best at a light duty job." In January 2002, Lambert saw Dr. Gonzalo Hidalgo for a neurological consultation. According to Dr. Hidalgo's records, he opined that Lambert had failed back syndrome at the cervical spine level. Because an EMG nerve conduction study performed on the left upper extremity came back normal, he discharged her and referred her to another physician for pain management.

Lambert subsequently returned to Dr. Hidalgo's care. According to a report dated January 27, 2003, Dr. Hidalgo noted that "she is working part time and she has significant numbness, tingling and weakness in the left upper extremity. It appears that it is getting worse over time. She also complains of diffuse muscular pain, especially in the morning." He prescribed a muscle relaxer for the pain and ordered an EMG/NCS. Dr. Hidalgo also saw Lambert on February 24, 2003 where he noted that she "continues to complain of left upper extremity intermittent weakness and diffuse pain. This is possibly related to her 'new job'." He prescribed more medication.

Dr. Hidalgo's records show that Lambert was examined the next day. In his report, he mentioned that she returned to work as a cashier and that she "started complaining of weakness, especially involving the left upper extremity." Another medication was prescribed, and Dr. Hidalgo indicated that she "will be off of work until evaluation of her problems." Upon subsequent visits, Dr. Hidalgo opined that Lambert's "condition has no clear neurological component and she needs to be followed by a rheumatologist." Lambert was referred to Dr. Mohammad Shbeeb with

a possible diagnosis of fibromyalgia. After an examination, Dr. Shbeeb concurred with this diagnosis.

Lambert was then referred to Dr. Michael Dole for pain management. Dr. Dole's records indicate that he agreed with Dr. Shbeeb's diagnosis of fibromyalgia. When he examined Lambert on October 7, 2003, Dr. Dole noted that she was in more pain due to her work as a cashier. He diagnosed her as being in a depressed mood with Adjustment Disorder and referred her to Dr. James Quillin, a psychologist.

According to his records, Dr. Quillin first began seeing Lambert in November 2003. His initial diagnosis was probable Mood Disorder (Depression) secondary to medical condition (Chronic Pain Syndrome), Moderate with Somatization. After meeting with Lambert for follow-up visits, he confirmed this diagnosis. Dr. Quillin's records indicate that in November 2003, he informed Lambert that she would be a good candidate for conservative behavioral pain management. In the following months, Dr. Quillin continued to meet with Lambert, and he stated that she complained of pain, her depression became more severe, and she was struggling with bouts of insomnia.

In January 2004, Dr. Quillin's plan was to "seek the appropriate insurance authorization to undertake a trial of ten such visits [for psychophysiologic therapy] to see if we can normalize her sleep with medication and also improve her persistent depression with this treatment option." It was around this time that Lambert began treating with Dr. Bradley Bartholomew, a neurosurgeon, complaining of several ailments, such as neck pain and numbness in the left upper extremity. His notes show that he recommended a myelogram and a post myelogram CT of the cervical spine as well as a muscle stimulator. According to Dr. Bartholomew's deposition testimony,

he wrote a letter dated March 31, 2004, in which he advised that Lambert "work at sedentary to light duty and no working with arms above shoulders."

In April 2004, Dr. Quillin diagnosed Lambert with having "moderate to severe nonpsychotic depression with substantial somatization." In his report dated August 27, 2004, Dr. Quillin stated that Lambert's "depression is now clearly severe from a clinical standpoint." He opined that she "is not capable of return to work at this juncture secondary to her severe impairment of psychologic status."

Although Lambert treated with Dr. Dole on a regular basis, by September 21, 2004, Dr. Dole determined that from a physical standpoint, Lambert's return to work would be unlikely.

According to Dr. Bartholomew's records, Lambert had an appointment on June 2, 2005, in which she stated that "the repetitious use of her neck and upper extremities prevents her from working as a cashier." Dr. Bartholomew testified that during that visit, he told Lambert to consider another surgery.[3] He indicated that when he saw her on October 11, 2005, her condition had worsened in that she had more problems. Furthermore, according to Dr. Bartholomew, on October 10, 2005, he gave Lambert a work excuse restricting work from the date that he recommended surgery, June 2, 2005. He opined that she was unable to work as a cashier.

In examining the evidence before us, specifically Lambert's testimony and the medical reports from her treating physicians, we find that the record supports the determination that Lambert has proven by clear and convincing evidence that she is physically unable to engage in any kind of employment. The evidence reveals that since July 21, 1998, the date of injury, to December 22, 2005, the date of trial, Lambert has consistently struggled with symptoms attributable to her work-related

---

[3] As of the date of trial, Lambert did not have a third surgery. However, in her brief submitted to this court, she stated that she has undergone a third neck surgery.

accident. We note that although Lambert attempted to work different positions, most notably, as a cashier, Lambert complained that the pain was so severe that she had to discontinue her employment in June 2003. These complaints are substantiated by the numerous volumes of medical records in which physicians opined that this pain was caused by the cashier position. *See Gordon v. Sandersons Farms*, 96-1587, p. 8 (La.App. 1 Cir. 5/9/97), 693 So.2d 1279, 1285 (where the employee testified that his pain was "'very constant' and has prevented him from working since the accident." The court found that his medical records reflected "consistent complaints of . . . pain since the accident" and therefore, the employee was temporarily totally disabled.)

We note that although Dr. Bartholomew informed Brookshire in May 2004 that Lambert could work as a cashier if there was "no work activity with arms above shoulders and sedentary to light duty lifting restrictions[,]" he stated in his deposition, taken in October 2005, that he "would've restricted her from working as a cashier when he first saw her because of pain and irritation." Recall that Dr. Bartholomew first saw Lambert in March 2004. Furthermore, with regard to other job positions Brookshire alleged that it offered to Lambert, Eddie Crawford, the claims adjuster handling Lambert's claim, admitted that before October 2005, Brookshire had not offered Lambert any position other than the cashier position.[4]

Given this evidence, we find that the workers' compensation judge was not manifestly erroneous in finding that Lambert met her burden of proof with regard to La.R.S. 23:1221(1)(c), finding her temporarily totally disabled, and awarding her temporary total disability benefits.

Furthermore, we find no merit in Brookshire's contention that the workers' compensation judge "erred in finding [it] arbitrary and capricious for the termination

---

[4] The record indicates that Lambert was offered a position as a self-serve gas station attendant in October 2005.

of benefits." In addition to the evidence presented above, the record indicates that from August 9, 1998 to June 21, 2003, Brookshire paid Lambert weekly indemnity benefits. However, once Lambert stopped working in June 2003, those benefits were terminated, despite reports from her treating physicians that she was having trouble working as a cashier. At that time, Brookshire had no evidence to dispute these findings. Further, Brookshire failed to reinstate Lambert's benefits even though Lambert's treating physicians opined that she was unable to return to work.

Accordingly, this assignment has no merit.

*Penalties*

Brookshire contends that the workers' compensation judge erred in assessing it with multiple penalties and attorney's fees for the failure to timely authorize medical procedures and for the failure to pay and/or timely pay medical expenses. It claims that "Eddie Crawford approved all requests for medical treatment when received. Any alleged delays in medical treatment were not caused by Brookshire Grocery Company." Furthermore, Brookshire argues that "all medical bills related to the alleged work injury were paid by Brookshire Grocery Company when Eddie Crawford received the bill." In sum, Brookshire asserts that it "acted completely reasonable under the circumstances" and that the "assessment of penalties should be reversed."

Louisiana Revised Statutes 23:1201(E) states that "[m]edical benefits . . . shall be paid within sixty days after the employer or insurer receives written notice thereof." Louisiana Revised Statutes 23:1201(F) provides:

> Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or

10

medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.

. . . .

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

Although La.R.S. 23:1201(F) refers to "the failure to provide payment," we have "consistently applied the sanctions of La.R.S. 23:1201(F) for the failure to authorize a medical treatment or procedure that is subsequently deemed necessary. Thus, the period of time in which the employer or insurer must act is sixty days, as provided in La.R.S. 23:1201(E)." *Harbor v. St. Frances Cabrini Hosp.*, 01-1551, pp. 6-7 (La.App. 3 Cir. 5/15/02), 817 So.2d 1269, 1273, *writ denied*, 02-1684 (La. 10/4/02), 826 So.2d 1125 (citations omitted).

"To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim." *Landry v. Furniture Center*, 05-643, p. 10 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-358 (La. 4/28/06), 927 So.2d. 290. Whether or not the employer is cast with attorney fees and penalties is a question of fact that will not be reversed on appeal absent manifest error. *Kibodeaux v. Cajun Bag & Supply Co.*, 99-149 (La.App. 3 Cir. 6/2/99), 742 So.2d 582.

Because Brookshire challenges the assessment of several penalties, we address them individually.

11

Muscle Stimulator

Brookshire argues that the workers' compensation judge "erred in awarding $2,000.00 in penalties for failure to authorize the muscle stimulator." It also challenges the $2,000.00 penalty for its alleged "failure to pay and/or timely pay R.S. Medical."

In his oral ruling, the workers' compensation judge stated:

> The records indicate that a demand was made for the payment of a bill for RS Medical in association with the muscle stimulator that Dr. Bartholomew had recommended. The payment records of the employer indicate that there had been no payment of the bill for this muscle stimulator. Mr. Crawford testified at trial he was not aware that this had ever been denied. The medical records from RS Medical indicates that the stimulator was denied, so I assess a Two Thousand Dollar ($2,000.00) penalty for the failure to pay the medical expense of RS Medical as well as a Two Thousand Dollar ($2,000.00) penalty for the failure to authorize the muscle stimulator.

Dr. Bartholomew's records show that on March 11, 2004, he recommended that Lambert receive a muscle stimulator. On March 26, 2004, Lambert sent a letter to Brookshire seeking approval of this treatment. On April 27, 2004, R.S. Medical sent Lambert a letter informing her that her insurance company denied authorization for the muscle stimulator.[5] As no reason was given for Brookshire's failure to authorize the muscle stimulator, we do not find that the workers' compensation judge was manifestly erroneous in imposing a penalty pursuant to La.R.S. 23:1201(E) and (F).

According to a Health Insurance Claim Form submitted by R.S. Medical, Lambert was treated from March 10, 2004 to April 9, 2004. Lambert submitted into evidence a letter dated May 21, 2004, in which she requested that Brookshire pay the R.S. Medical bill. We note that the workers' compensation judge stated that Brookshire did not pay the bill; however, according to Lambert, the bill was paid on November 3, 2004. Based on this evidence, we find no manifest error in the workers'

_____

[5] The parties stipulated at trial that Brookshire was self-insured.

compensation judge's determination that the failure to (timely) pay the R.S. Medical bill within sixty days of written notice warranted a penalty pursuant to La.R.S. 23:1201(E) and (F).

This assignment has no merit.

Hospital Bill

Brookshire contests the $2,000.00 penalty "for failure to pay Christus St. Frances Cabrini Hospital's bill for the date of service of March 17, 2005."

With regard to this treatment, the workers' compensation judge stated:

> The records indicate in . . . "Plaintiff Exhibit 19," a bill from St. Franc[e]s Cabrini Hospital with a demand letter made on March 30th of 2005 with regard to her visit there in association with headaches she had had since a nerve block. The records of Dr. Qullin and Dr. Dole indicate the complaints that Ms. Lambert had with headaches subsequent to the nerve block. The report of Dr. Quillin is dated March 14th of 2005. The report of Dr. Dole is dated March 23rd of 2005, and the records indicate in "Exhibit 20" that payment was received by the hospital on July 26th of 2005. Further records show the payment was not issued until July 14th of 2005. The testimony of Mr. Crawford was that they needed medical records to verify this. And according to the case law as appropriately cited by Ms. Losavio [plaintiff's counsel] in her Brief, they had 60 days after they received the demand to obtain this information, and the Court finds that there was an inappropriate delay in paying the bill in light of the fact that in Dr. Quillin and Dr. Dole's report, both of which Crawford said he had received, indicates the treatment was for the headaches associated with the nerve block, and I would assess a Two Thousand Dollar ($2,000.00) penalty.

After reviewing the record, we find that the $2,000.00 penalty is not manifestly erroneous in that Brookshire did not pay the bill within 60 days of receiving written notice. La.R.S. 23:1201(E) and (F). Therefore, this assignment has no merit.

Treatment by Dr. Bartholomew

Brookshire disputes the $2,000.00 penalty for "failure to timely authorize medical treatment by Dr. Bradley Bartholomew."

In his oral ruling, the workers' compensation judge remarked:

She also makes a claim for failure to authorize or timely authorize medical treatment with Dr. Bartholomew. She made demands to see Dr. Bartholomew. The entire record was introduced into the -- into evidence in this matter. Her claim was filed with the Court on August 19th of 2003. There was a mediation held in December 2003, and she did not see Dr. Bartholomew until March of 2004. The Court concludes that the late -- although there's really no testimony, really, about any authorization to see Dr. Bartholomew. The medical -- the mediation records introduced indicate that at the mediation it was agreed that Ms. Lambert could see Dr. Bartholomew, and she saw him [i]n March 2004. This was long after the medication [sic] in December of 2003, and I award a Two Thousand Dollar ($2,000.00) penalty.

Lambert testified that after her accident, she was treated by Dr. Wilson, a neurosurgeon. She further testified that after Dr. Ricciardi performed her first surgery, she attempted to revisit Dr. Wilson, but "he had moved out of state." Thus, in August 2003, Lambert sent Brookshire a letter seeking authorization for treatment with Dr. Bartholomew. As the approval of Lambert's treatment with Dr. Bartholomew was not given until the mediation in December 2003, we find that pursuant to La.R.S. 23:1201 (E) and (F), the workers' compensation judge's imposition of a $2,000.00 penalty was not manifestly erroneous.

This assignment is without merit.

Behavioral Pain Management

According to Brookshire, the workers' compensation judge "erred in awarding $2,000.00 in penalties for failure to timely authorize behavioral pain management."

The workers' compensation judge determined:

She made demands for behavioral pain management as recommended by Dr. Quillin. Demands were made on December 16th of 2003, December 29th of 2003, October 8th of 2004, December 17th of 2004 and January 26th of 2005. Apparently, this had been authorized, because the records indicate that she had attended the behavioral pain management program and had done so from January 24, 2005 to April 12th of 2005. Mr. Crawford indicated at trial that he had received the reports of Dr. Quillin. He was well aware that he had recommended and continued to recommend the behavioral pain management program. There was a significant delay in the authorization of this program, and I would assess a Two Thousand Dollar ($2,000.00) penalty.

After a review of the record, we find no manifest error in the workers' compensation judge's determination as the evidence supports his reasoning.

Accordingly, this assignment has no merit.

Psychophysiologic Therapy

Brookshire also contests the workers' compensation judge's award of "$2,000.00 in penalties for failure to timely authorize psychophysiologic therapy for nonpharmacological management of insomnia and depression."

With regard to this treatment, the workers' compensation judge explained:

Demands were -- a demand of several demands were made by Ms. Losavio on behalf of Ms. Lambert for psychophysiological therapy recommended by Dr. Quillin who helped with Ms. Lambert's depression and sleep problems. Demand was made on February the 3rd of 2004, April 12th of 2004, July 29th of 2004, October 8 of 2004 and October 27th of 2004. The records indicate that she had been approved for a brief trial of psychophysiological therapy. This is contained in the October 15, 2004 reports from Dr. Quillin. This was authorized several months later despite the fact that the employer was not in possession of any contrary psychological or psychiatric record during this pending period of time, and I would assess a Two Thousand Dollar ($2,000.00) penalty.

Upon reviewing the record, we do not find that the workers' compensation judge was manifestly erroneous in concluding that psychophysiologic therapy was not timely authorized and in assessing a $2,000.00 penalty. Therefore, this assignment is without merit.

Selective Nerve Root Block

In this assignment of error, Brookshire questions the $2,000.00 penalty for "failure to timely authorize selective nerve root block."

The workers' compensation judge articulated his reasons for assessing Brookshire with the penalty:

[T]here's also a demand made for penalties and attorney's fees associated with the late approval of a selective nerve root block recommended by Dr. Bartholomew [o]n July 8 of 2004. The records of Dr. Dole indicated, and his records are dated January 13th of 2005, that Ms. Lambert was still

15

awaiting approval of the selective nerve root block. The records also show that this was not performed until March 1st of 2005. Although there was no questioning of Mr. Crawford at trial about the nerve root block recommended by Dr. Bartholomew, there were no demand letters made by Ms. Losavio [plaintiff's counsel] for this nerve root block introduced into evidence. I still conclude from the record because Dr. -- because Mr. Crawford testified he was receiving these reports, he had the report from Dr. Bartholomew and Dr. Dole and the test was not performed until March of 2005 despite being recommended July 8th of 2004, so I assess a Two Thousand Dollar ($2,000.00) penalty associate[d] with that.

We note that Crawford, in fact, was questioned about the authorization for the selective nerve root block, and he stated that he did not "know of any time we ever refused to pay for it." Additionally, Crawford testified that "I don't know when [sic] they would have waited that long to have sent her for it or set it up."

Dr. Bartholomew's records show that he recommended a selective nerve root block on July 8, 2004. According to Dr. Dole's report dated January 13, 2005, Lambert "asked whether the selective nerve root block, as ordered by Dr. Bartholomew in New Orleans, was ever approved." In this report, Dr. Dole noted that he "had requested a SNRB [selective nerve root block] by Dr. Firmin, but this was never approved and, in fact, was rejected by insurance." Nevertheless, he still recommended that Lambert have the procedure. According to Dr. Bartholomew's and Dr. Dole's records, the procedure was performed on March 1, 2005. Given this evidence, we find that the workers' compensation judge did not commit manifest error in casting Brookshire with a $2,000.00 penalty for its failure to timely authorize the selective nerve root block.

This assignment lacks merit.

Mileage Reimbursement

Brookshire contends that the workers' compensation judge "incorrectly ruled Sheryl Lambert received a mileage shortage in the amount of $1.08 and erred in awarding $2,000.00 in penalties for failure to pay and/or correctly pay medical travel

expenses for the dates of service, August 12, 2005, through October 19, 2005." It argues that it is "being assessed with a penalty due to Sheryl Lambert requesting an inadequate mileage reimbursement" in that the reimbursement "included mileage for medical treatment performed by Dr. Slaughter which was not compensable." Brookshire further contends that Lambert "never alleged this error at trial."

The workers' compensation judge acknowledged that Lambert made a demand for mileage reimbursement in a letter dated October 21, 2005. He explained that:

> The payment was made to the employee on October 25th of 2005 and the sum of money [was] less than that claimed by Ms. Lambert. The testimony at trial was that there was a deduction from the mileage made based on the visits to Dr. Slaughter being not related to the job injury. Counsel for Ms. Lambert pointed out in Brief that even if you exclude the visits to Dr. Slaughter, the amount paid was still incorrect, so I did have to do the math on that. And I found that there was an incorrect payment. Ms. Lambert was shorted a Dollar and Eight Cents ($1.08). Her miles absent the miles of seeing Dr. Slaughter total 674 miles -- 674.01 [sic] of a mile at Thirty-seven Cents (.37) -- Thirty-six Cents per mile (.36). That means she was entitled to receive Two Hundred and Forty-two Dollars and Sixty-eight Cents ($242.68) and she only received Two Hundred and Forty-one Dollars and Sixty Cents ($241.60). Although the sum is a small sum of money, there was a clerical error made on behalf of the employer, and I must assess a Two Thousand Dollar ($2,000.00) penalty.

We find that the workers' compensation judge did not commit manifest error in assessing Brookshire with a $2,000.00 penalty for its failure to reimburse Lambert the proper sum. In reaching this decision, we note that in its brief submitted to this court, Brookshire contends that it did not pay the mileage reimbursement requested by Lambert because it contained "mileage for medical treatment performed by Dr. Slaughter which was not compensable." Lambert argues, in her brief, that "Brookshire put on no evidence at trial that the reason it did not pay the correct mileage was specifically due to the mileage reimbursement sheet containing visits to Dr. Slaughter."

17

After reviewing the record, we note that when questioned about the mileage reimbursement, Crawford, the claims adjuster, acknowledged that Brookshire did not pay the entire sum Lambert requested; however, he did not offer *any* explanation for the payment shortage.  Nevertheless, when Lambert's attorney questioned her about how much she paid for her visits with Dr. Slaughter, defense counsel lodged an objection to the relevancy of this information as "[w]e have nothing from Dr. Slaughter or anybody saying that any of that's related to this at all."  As Lambert's attorney did not have Dr. Slaughter's medical records documenting his treatment with Lambert, the workers' compensation judge sustained the objection.

Louisiana Revised Statutes 23:1203(D) provides:

> In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the medical services, medicines, and prosthetic devices, which the employer is required to furnish under this Section, and for the vocational rehabilitation-related mileage traveled by the employee at the direction of the employer.  When the employee uses his own vehicle, he shall be reimbursed at the same rate per mile as established by the state of Louisiana for reimbursement of state employees for use of their personal vehicle on state business.  The office shall inform the employee of his right to reimbursement for mileage.

In *Jeffcoat v. McCann's Seafood*, 96-1259, p. 4 (La.App. 3 Cir. 5/7/97), 696 So.2d 8, 10, this court stated that "[a]n employee may recover reasonable travel expenses in connection with medical treatment as part of the employee's medical costs."  However, the testimony of the employee alone is insufficient to require the employer to pay for travel expenses the employee incurred in seeking medical treatment.  *Downs v. J. & J. Maint., Inc.*, 97-511 (La.App. 3 Cir. 10/8/97), 702 So.2d 845, *writ denied*, 97-2848 (La. 1/30/98), 709 So.2d 715.  In *Lee v. East Baton Rouge Parish Sch. Bd.*, 623 So.2d 150, 158 (La.App. 1 Cir.), *writ denied*, 627 So.2d 658

(La.1993), the first circuit denied part of the employee's request for mileage reimbursement, stating:

> [Louisiana Revised Statutes 23:1203(D)] provides that the employer shall be liable for the expenses "reasonably and necessarily" incurred for mileage traveled by the employee to obtain medical services. Lee has requested mileage reimbursement for visits made to Tulane Medical Center, including trips to the Tulane Medical Center neurosurgery clinic, bone clinic and x-ray clinic, and Hotel Dieu Hospital. However, because the record does not contain evidence of the medical services provided, the relation of the services to Lee's 1984 accident, or their necessity, Lee is not entitled to reimbursement for travel expenses related to these visits.

Here, we note that the medical records of Dr. Slaughter are not entered into evidence. Other than Lambert's testimony, there is no evidence of the medical services Dr. Slaughter provided and whether this treatment was related to Lambert's work injury. As such, the workers' compensation judge's determination that Lambert was not entitled to mileage reimbursement for those visits was correct.

However, the workers' compensation judge concluded that even after deducting those visits from her reimbursement request, Brookshire did not pay Lambert the correct amount. The record supports this determination.

In *Brown v. Texas-LA Cartage, Inc.*, 98-1063 (La. 12/1/98), 721 So.2d 885, the Louisiana Supreme Court addressed whether the employer was liable for penalties and attorney's fees for its failure to timely pay the correct amount of temporary total disability benefits. The supreme court found that although "the defendants did not act in an egregious manner[,]" the imposition of penalties and attorney's fees were proper for the employer's "failure to timely and *adequately* compensate plaintiff." *Id*. at 893. (Emphasis added). Furthermore, we note that in *Romero v. Garan's, Inc.*, 05-1297 (La.App. 3 Cir. 4/19/06), 929 So.2d 258, this court recently held that because the employer failed to pay the correct mileage reimbursement on four different occasions, a $2,000.00 penalty was warranted for each of the four violations.

In line with *Brown* and *Romero*, we find that as Brookshire failed to reimburse Lambert the correct amount, the workers' compensation judge's imposition of a $2,000.00 penalty was not manifestly erroneous. Accordingly, this assignment is without merit.

*Penalty Cap*

Brookshire argues that the workers' compensation judge erred in awarding multiple penalties under La.R.S. 23:1201(F). According to Brookshire, these penalties are excessive and, therefore, must be reduced.

In *Maricle v. Sunbelt Builders, Inc.*, 05-398, p. 11 (La.App. 3 Cir. 11/2/05), 916 So.2d 1226, 1234, *writ denied*, 05-2506 (La. 3/31/06), 925 So.2d 1261, this court explained that "Louisiana Revised Statute[s] 23:1201(F) was amended by the legislature by 2003 La. Acts No. 1204, § 1, to expressly provide for multiple penalties and to place a cap on the amount of penalties which may be awarded at $8,000.000 [sic]. The effective date of the legislative amendment was August 15, 2003." As the amendment to La.R.S. 23:1201(F) is "a change in the law[, it ] must be given substantive effect[;]" therefore, it applies prospectively only. *Id.* at1235; La.Civ.Code art. 6. Furthermore, the jurisprudence is clear that "the provisions of the statute in effect at the time of the withholding of benefits control the award of penalties and attorney fees." *Smith v. Roy O. Martin Lumber Co.*, 03-1441, p. 13 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, 670, *writ denied*, 04-1311 (La. 9/24/04), 882 So.2d 1144. *See also Cormier v. Louisiana Southwest Scrap & Salvage*, 04-321 (La.App. 3 Cir. 12/1/04), 888 So.2d 1117; *Skipper v. Acadian Oaks Hosp.*, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122; *Gay v. Georgia Pacific Corp.*, 32,653 (La.App. 2 Cir. 12/22/99), 754 So.2d 1101. The penalty award will not be reversed on appeal in the

20

absence of manifest error. *Reed v. Abshire*, 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224.

Brookshire was assessed with multiple $2,000.00 penalties for the failure to (timely) authorize medical treatment and for the failure to (timely) pay medical expenses. The total amounted to $16,000.00. The record indicates that Brookshire's failure to (timely) authorize medical treatment and its failure to (timely) pay medical expenses occurred after the amendment to La.R.S. 23:1201(F), which became effective on August 15, 2003. Lambert filed her Disputed Claim for Compensation Form on August 19, 2003 and subsequently sought authorization for medical treatment and payment of medical expenses. Given this evidence, we find the awarding of multiple penalties in excess of $8,000.00 clearly wrong. Accordingly, we reduce the total penalty award from $16,000.00 to $8,000.00.

*Attorney's Fees*

Brookshire contends that "[a]s there were only three depositions taken, written discovery, and the trial of this matter only consisted of two witnesses and was completed in a short period of time, the award of $12,000.00 is excessive. The attorney's fees award of $12,000.00 was an abuse of discretion."

Louisiana Revised Statutes 23:1201(F) allows an award of attorney's fees when the employer fails to timely pay medical expenses and/or authorize treatment. Although there is no limitation on the amount of attorney's fees which may be awarded, the award must be reasonable, and it will not be overturned absent manifest error. *Alexander*, 889 So.2d 366. The reasonableness of an award of attorney's fees is determined from "the degree of skill and ability exercised, the amount of the claim, and the amount recovered for the plaintiff, and the amount of time devoted to the

case." *Id*. at 378 (quoting *Semere v. Our Lady of Lourdes Hosp.*, 03-1702, p. 14 (La.App. 3 Cir. 6/29/04), 875 So.2d 1048, 1057.)

The record shows that Lambert filed her Disputed Claim for Compensation Form on August 19, 2003. Since that time, Lambert's attorney has made numerous requests for the authorization of Lambert's medical treatment and for payment of her medical expenses. Volumes of Lambert's medical records have been collected and placed in the record. Furthermore, she prepared for trial and as the workers' compensation judge noted, successfully recovered back-due indemnity benefits and several penalty awards for Lambert. As such, we find that the workers' compensation judge's award of $12,000.00 in attorney's fees was reasonable and not manifestly erroneous.

This assignment lacks merit.

*Court Costs*

Brookshire contends that "it should not have been assessed with court costs and expenses[.]"

Louisiana Code of Civil Procedure Article 1920 provides that:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.

Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

"An appellate court will not disturb a trial court's assessment of court costs absent an abuse of discretion." *Whitbeck v. Kay*, 05-774, p. 6 (La.App. 3 Cir. 2/1/06), 921 So.2d 1178, 1182. Insofar as Lambert has prevailed on the majority of her claims, we find that the workers' compensation judge did not abuse his discretion in assessing Brookshire with court costs.

This assignment has no merit.

**DECREE**

For the foregoing reasons, we amend the total penalty award from $16,000.00 to $8,000.00 in accordance with La.R.S. 23:1201(F). In all other respects, the ruling of the workers' compensation judge is affirmed. All costs of these proceedings are assessed against the defendant, Brookshire Grocery Company.

**AFFIRMED AS AMENDED.**