# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-552

**CHESTER J. FREDERICK**

**VERSUS**

**PORT AGGREGATES, INC.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 04-08897
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Michael G. Sullivan, and James T. Genovese, Judges.

**AFFIRMED.  ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**

Robert T. Jacques, Jr.
Post Office Box 1883
Lake Charles, LA   70602
(337) 433-4674
COUNSEL FOR PLAINTIFF/APPELLEE:
    Chester J. Frederick

Shaun S. Gill
Yul D. Lorio
Blaine A. Doucet
Doucet  Lorio, L.L.C.
One Lakeshore Drive, Suite 1695
Lake Charles, LA   70629
(337) 433-0100
COUNSEL FOR DEFENDANT/APPELLANT:
    Port Aggregates, Inc.

AMY, Judge.

The claimant received indemnity and medical benefits for a work-related accident and injury. His medical benefits were subsequently terminated when his employer discovered that he was selling watermelons. Filing a disputed claim form, the claimant sought medical benefits, penalties, and attorney fees. Following a hearing, the workers' compensation judge found in the claimant's favor. The employer appeals. For the following reasons, we affirm. Additional attorney fees are awarded for work performed on appeal.

### Factual and Procedural Background

The claimant, Chester J. Frederick (Frederick), began working for the defendant, Port Aggregates, Inc. (PAI), in November 2003 as a cement truck driver. According to Frederick, on October 12, 2004, he was "[t]rying to get the cement chute off the back of the truck. . . I went to twist it, get it off when I pulled something in my left arm. . . ." Frederick testified that when he returned to the work premises, he reported the accident to Howard Manuel (Manuel), who advised him to come back if his pain worsened. His pain persisted; therefore, on the following day, Frederick requested that Warner Hanks (Hanks), plant supervisor, be notified of his accident.

Frederick testified that:

> They took me to Business Health Partners the following week, and they put me on light duty, told me no straining, pushing, and pulling with that arm. They kept me on light duty one day, then Hanks -- Warner Hanks called and told Manuel to put me back on the truck and he said that he needed everybody on the truck; and if I got to hurting too bad, he would pull me off the truck.

Frederick testified that he drove the truck for a brief period of time before he made the decision to stop. Frederick returned to Business Health Partners and the treating physician referred him to Dr. Alan Hinton, an orthopedic surgeon. He testified that

2

Dr. Hinton administered a cortisone shot in his arm, which did not alleviate his pain. Dr. Hinton put him on light duty and referred him to Dr. James Perry, an orthopedic surgeon, for neck and back pain that, according to Frederick, began "when they put me back on the truck and . . . they wasn't supposed to do that." Frederick stated that Dr. Perry gave him a cortisone shot in his neck to no avail.

Frederick stated that Dr. Perry placed him on light duty, which he worked for a couple of days. However, Frederick alleged that Hanks told him that "he didn't f'ing need me, to go home . . . . If you can't get on the truck, I don't f'ing [need] you." Frederick maintained that Hanks "made me stop coming to work. He sent me home, told me not to come back." Frederick complied and subsequently began receiving workers' compensation benefits.

Frederick filed a disputed claim for compensation form on December 2, 2004, in which he alleged that wage benefits had not been paid, medical treatment had not been authorized, he had not been allowed to select his choice of physician, and vocational rehabilitation had not been provided. He sought penalties and attorney fees, costs, and interest on all amounts.

Although his requests to see Dr. Clark Gunderson, his choice of orthopedic surgeon, were initially denied, the record indicates that Frederick visited with Dr. Gunderson on March 9, 2005. On March 24, 2005, Dr. Gunderson requested that Frederick undergo a cervical discogram at the C3-4 and C4-5 levels. Because two ruptured discs were discovered in Frederick's neck, Dr. Gunderson recommended surgery. Dr. Perry concurred.

Frederick testified that in October 2005, he was presented with several "Employee's Monthly Report of Earnings" forms that he was told to complete. A

3

review of the forms shows that Frederick was asked if he was "self-employed or involved in any business enterprise." He was also asked if he received wages. Frederick testified that although he had sold watermelons during June and July 2005, he did not disclose this information on the forms. He maintained that he did not understand the questions and that he simply complied with his attorney's instructions to sign the forms.

Frederick stated that he sold watermelons out of his truck on the side of the road, not for profit but, "to get out of the house, give me something to do because I was getting bored there being in the house all the time, cooped up. I was fixing to lose it. I couldn't do anything." He testified that he sold watermelons a couple of days a week, usually for three or four hours per day. Frederick claimed that he did not sell many melons and that in fact, he came "out in the hole." He acknowledged that he was receiving workers' compensation benefits at that time.

According to Frederick, PAI terminated his medical benefits when it learned of this activity; however, it continued to pay his indemnity benefits. He explained that "I didn't think I was doing anything wrong. . . . Dr. Perry and Dr. Hinton said that I could be on light duty, so I figured doing that shouldn't affect the money. Sitting there collecting money wasn't nothing." He emphasized that when he purchased the melons, they were loaded into his truck for him. Furthermore, when his customers "came to buy them, I told them, 'if you want the melon, you will have to pick it up because I can't do it. I have tried and I couldn't do it. It make me hurt too bad.'"

Frederick subsequently filed a supplemental disputed claim form in which he alleged, among other things, that medical treatment had not been authorized. He sought penalties, attorney fees, and interest. Thereafter, PAI filed a motion for

4

summary judgment alleging that Frederick "admittedly made false statements and representations while receiving workers' compensation benefits." Specifically, PAI contended that Frederick made false statements/misrepresentations about his work ability and condition, his employment status, and wages received. Thus, PAI argued that Frederick violated La.R.S. 23:1208, thereby forfeiting his right to receive benefits. After a hearing, PAI's motion for summary judgment was denied.

On October 30, 2006, a hearing was held in which the workers' compensation judge found that Frederick did not commit fraud in violation of La.R.S. 23:1208. PAI was ordered to pay a $2,000.00 penalty "for failure to reasonably controvert Chester J. Frederick's entitlement to authorization of regular continued medical treatment" and a $2,000.00 penalty for "failure to reasonably controvert Chester J. Frederick[']s entitlement to surgery, the necessity of which, was verified by Port Aggregates, Inc.'s physician, Dr. James Perry, M.D." The workers' compensation judge additionally held that Frederick was entitled to surgery. Frederick was awarded $7,000.00 in attorney fees plus legal interest.

It is from this ruling that PAI appeals, designating the following as error:

A. The Trial Court was clearly wrong and committed a manifest error in establishing that the Claimant did not willfully defraud the workers compensation system.

B. The Trial Court was clearly wrong and committed a manifest error in not allowing the video surveillance of the claimant caught in the act of which he readily admitted to.

C. The Trial Court was clearly wrong and committed manifest error in awarding penalties and attorneys fees when the ruling is established from unsupported facts which would not be obvious to the employer.

Frederick answered the appeal, seeking additional attorney fees for work performed on appeal.

5

**Discussion**

*Violation of La.R.S. 23:1208*

PAI argues that Frederick made willful, fraudulent statements regarding his work activity, thereby forfeiting his right to receive medical benefits under La.R.S. 23:1208. To support its position, PAI points to the Employee's Report of Monthly Earnings forms as well as Frederick's deposition testimony which, it alleges differs from his trial testimony.

Louisiana Revised Statutes 23:1208 provides, in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

A violation of La.R.S. 23:1208 occurs when: "(1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co*., 94-2708, 94-3108, p. 7 (La. 9/5/95), 660 So.2d 7, 12. Unless manifestly erroneous, the workers' compensation judge's finding of a violation of La.R.S. 23:1208 will not be overturned on appeal. *Cajun Rental & Servs. v. Hebert*, 05-482 (La.App. 3 Cir. 12/30/05), 918 So.2d 605.

In addressing whether the statute was violated, the workers' compensation judge concluded:

> The claimant herein is unsophisticated, unlearned and is inarticulate. He does not present himself very well; however, the court does not find that the claimant committed fraud, nor has the defendant

6

proven that the claimant committed fraud. The claimant did not make a false statement or misrepresentation willfully for the purpose of obtaining workers' compensation benefits as set forth in the Louisiana R.S. 23:1208. The defendant failed to prove its contention. In fact, the alleged surveillance which defendants [sic] argued as proof of the 1208 was not part of the evidence in this record. The claimant has failed to meet expectations as an ideal candidate for workers' compensation payments and he may have a less than firm grasp of what is expected of him in order to avail himself of medical treatment under the Comp act, but he is not a cheat and a fraud.

After reviewing the record, we find that it supports the workers' compensation judge's determination that PAI did not prove that Frederick made willful, false statements for the purpose of obtaining workers' compensation benefits. In its brief, PAI references Frederick's deposition in which he acknowledged: (1) that he sold watermelons for profit, during which time he was receiving workers' compensation benefits; (2) that he signed several Employee's Monthly Report of Earnings forms in which he did not indicate that he was working and/or receiving wages; and (3) that he understood the forms and the penalty imposed for making false statements.

However, at trial, Frederick testified that he did not know the purpose of the Employee's Monthly Report of Earnings forms and that he did not understand the questions. Rather, Frederick stated that he simply signed the forms per his attorney's instructions.

At trial, PAI's attorney noted that a question on the form asked, "For the period covered in this report, were you self-employed or involved in any business enterprise? These include but are not limited to farming, sales work, operating business (even if the business lost money), child care, yard work, mechanical work, or any type of family business." Frederick checked the "No" box. He reasoned that he did not consider himself self-employed because he "wasn't receiving a paycheck. I wasn't

7

receiving any wages. It's not a job. It was something to get me out the house, something for me [to] do, keep me occupied, keep me from going nuts."

Additionally, PAI's attorney pointed out that Frederick answered, "No" to the question, "For the period covered in this report, did you receive a salary, wage, sales commission, or payment, including cash, of any kind?" According to Frederick, he did not understand that he should have indicated that he received money even though he did not generate a profit. Further, he testified that during his deposition, he stated that he understood the penalty for providing false information on the forms because he "didn't think [he] was doing anything wrong on the side of the road selling watermelons."

Given the circumstances, the workers' compensation judge's finding that Frederick did not *willfully* make false statements or representations for the purpose of obtaining workers' compensation benefits was not manifestly erroneous. It is clear from the record that Frederick, who did not graduate from high school,[1] did not fully understand and/or was not aware of what kinds of activity were prohibited under the statute. Frederick testified that he thought he was complying with the light duty restriction, did not consider himself self-employed, and did not believe that he needed to report any income because he came "out in the hole." Given this testimony, we find no manifest error in the workers' compensation judge's conclusion that there was no violation of La.R.S. 23:1208. *See Herrera v. Cajun Co*., 06-1627, pp. 13-14 (La.App. 4 Cir. 6/6/07), 960 So.2d 1161, 1169 (wherein the fourth circuit noted that after observing the claimant's demeanor and testimony, the workers' compensation judge found that his "misstatements were not intentional and were the result of his

---

[1] Frederick testified that he failed three times before he quit school in the tenth grade. He stated that, "I don't read too well and some words, I don't understand what they are. . . ."

limited ability to read relevant documents and to understand his situation." Thus, the court concluded that the claimant's inadvertent statements did "not support imposition of the harsh remedy provided by the anti-fraud statute.")

This assignment is without merit.

*Video Surveillance*

PAI contends that the workers' compensation judge erred in allowing Frederick to invoke his right against self-incrimination when it sought to introduce into evidence a videotape of him selling watermelons. According to PAI, the workers' compensation judge "committed an error in not allowing the claimant to view the video before any questions were raised." It asserts that "[h]ad the claimant had an opportunity to view the video, he could have identified himself, thus making the video authenticated." PAI points out that Frederick had already admitted to engaging in this activity.

During the cross-examination of Frederick, counsel for PAI stated that, "I want to show the defendant [sic] something right quick, which is the video surveillance we have all gone over and we have all seen before, and I will just ask him simply to identify the man in the video." The following exchange then occurred:

> MR. JACQUES [Frederick's attorney]:
>     I don't know what video that is, Your Honor.
>
> MR. GILL [PAI's attorney]:
>     It's the same one I have provided you.
>
> MR. JACQUES:
>     Who is going to identify it?
>
> (MR. GILL)
> Q. Mr. Frederick, I'm playing this for you.

9

MR. JACQUES:

 Objection, Your Honor.

THE COURT:

 Stand at ease for a moment.  Let's take a brief recess.
  (A discussion was held off the record).

THE COURT:

 Gentlemen, I think we took a recess at the objection of the video surveillance testimony.  Did you gentlemen need to put further objections on the record?

 MR. JACQUES:

 Your Honor, I'm going to object for no foundation, and that would be self-incriminating.  This is a fraud case.

THE COURT:

 Would you like to respond, Mr. Gill?

MR. GILL:

 Your Honor, you know, the claimant has already made an admission to doing that on the record.  I can show him a video, could be of anybody, and he can identify if that individual in the video is him or somebody else; and I would think that that would make the video admissible if he identified it as being a person in this courtroom today.

THE COURT:

 Well, to get him to authenticate the video, that is improper and, further, it is a violation of his fifth amendment rights, to which Mr. Jacques has objected.  And I do not believe the video surveillance is currently in evidence; therefore, I am going to sustain the objection.

After reviewing the record, we find that the workers' compensation judge did not abuse her discretion in refusing to require Frederick to view the videotape.[2]

*Medine v. Roniger*, 03-3436 (La. 7/2/04), 879 So.2d 706.  We note that there is no indication that Frederick was familiar with the recording of the videotape, the date on which it was taped, and/or the location of the recording.  Also, Frederick had already admitted to selling the melons.  Therefore, this assignment has no merit.

---

[2] We note that PAI did not proffer the excluded evidence.

*Penalties*

PAI asserts that Frederick "was admittedly working selling watermelons for money while receiving workers' compensation." Thus, it argues that it "reasonably controverted the claimant's injury, and in an effort to err on the side of caution, only terminated medical benefits related to the claimant. An award of . . . penalties is wholly inappropriate given the nature of the circumstances surrounding the case."

Louisiana Revised Statutes 23:1201(E) states that "[m]edical benefits . . . shall be paid within sixty days after the employer or insurer receives written notice thereof." Louisiana Revised Statutes 23:1201(F) provides in pertinent part:

> Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians . . . shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.
>
> . . . .
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

If medical treatment is not authorized within sixty days, the sanctions of La.R.S. 23:1201(F) will be applied. *Lambert v. Brookshire Grocery Co.*, 06-1001 (La.App. 3 Cir. 12/20/06), 945 So.2d 918. This court has explained that:

> To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to

reasonably controvert a workers' compensation claim. Whether or not the employer is cast with attorney fees and penalties is a question of fact that will not be reversed on appeal absent manifest error. *Id.* at 927. (citations omitted).

In her reasons for ruling, the workers' compensation judge remarked:

> Based on the evidence presented, [this] court finds that the claimant is entitled to penalties in the amount of $4,000 for the defendant's failure to authorize medical treatment as well as for defendant's failure to reasonabl[y] controvert the request for surgery. Defendant's own doctor, Dr. James Perry, concurred in the need for surgery.

> Claimant is further entitled to attorney's fees for defendant's arbitrary and capricious handling of this claim. Attorney's fees are owed in the amount of $7,000. Defendants [sic] shall pay all costs of these proceedings, including interest.

Medical Treatment with Dr. Gunderson and Dr. Lopez

After reviewing the record, we find that it supports the workers' compensation judge's imposition of a $2,000.00 penalty for PAI's failure to authorize medical treatment with Dr. Gunderson, Frederick's choice of orthopedic surgeon, and Dr. Frank Lopez, his choice of pain-management physician. According to a letter dated November 10, 2004, Frederick's attorney requested that PAI authorize visits with both physicians. However, the parties' stipulations demonstrate that Frederick's treatment with Dr. Gunderson was not authorized until March 4, 2005. Nevertheless, Dr. Gunderson was notified that no further treatment would be authorized following Frederick's November 15, 2005 appointment. As for Dr. Lopez, Frederick was not able to visit him until October 24, 2005.

With regard to Dr. Gunderson's recommended course of treatment, the stipulations state that:

On March 24, 2005 Dr. Clark A. Gunderson requested authorization for a cervical discogram at C 3-4 and C 4-5[3] [,which] was denied pending a second medical opinion with Dr. James Perry, initially scheduled for July 11, 2005 and re-scheduled by the claimant for August 8, 2005. The discogram was approved on September 12, 2005 for River Oaks Imaging in Houston, Texas.

The record clearly reflects that PAI did not timely consent to Frederick's request to be seen by his choice of treating physicians. Nor did it timely authorize the discogram. Insofar as PAI did not reasonably controvert Frederick's claim, we find that the workers' compensation judge's imposition of a penalty pursuant to La.R.S. 23:1201(F) was not manifestly erroneous.

This assignment is without merit.

Surgery

The record indicates that on October 25, 2005, Dr. Gunderson requested authorization for an anterior cervical fusion at the C3-4 and C4-5 levels. The parties stipulated that: "Authorization was denied on October 26, pending Dr. Perry's opinion. On November 15, 2005 Dr. Clark A. Gunderson received further notification that surgery was denied[.]"[4] On March 27, 2006, Dr. Perry agreed with Dr. Gunderson's recommendation; however, the surgery still was not authorized.

On April 4, 2006, Frederick's attorney sent a letter to PAI's attorney requesting that the adjuster handling Frederick's claim approve the surgery. Two subsequent demand letters were sent to PAI. By correspondence sent to Frederick's attorney on April 13, 2006, PAI denied authorization "until the conclusion of the trial on this matter." This position was reiterated in correspondence dated April 26, 2006, in

---

[3] The evidence shows that Frederick's attorney sent demand letters dated April 11, 2005 and July 29, 2005 for the approval of the discogram.

[4] According to a notation in Dr. Gunderson's records, surgery was denied on November 14, 2005.

which PAI stated, "our client will not be approving and/or paying for Mr. Frederick's surgical procedure until all legal remedies have been exhausted and a final judgment adverse to my client has been rendered." Nevertheless, Frederick once again sought approval in September 2006, one month prior to the hearing on this matter.

Insofar as Frederick repeatedly requested approval for the anterior cervical fusion, which PAI denied without possessing any medical evidence that surgery was not necessary, we conclude that the $2,000.00 penalty imposed by the workers' compensation judge was not manifestly erroneous. *See Vincent v. Napa Auto Parts & Supply*, 03-295 (La.App. 3 Cir. 6/23/04), 879 So.2d 301, *writ denied*, 04-1845 (La. 10/29/04), 885 So.2d 591 (wherein this court awarded penalties for the employer's failure to timely authorize the employee's discogram, even after the initial request was corroborated by the employer's physician of choice).

Accordingly, this assignment has no merit.

*Attorney Fees*

PAI contends that the workers' compensation judge erred in awarding attorney fees insofar as it reasonably controverted Frederick's claim.

In *Lambert*, 945 So.2d at 933, this court stated:

> Louisiana Revised Statutes 23:1201(F) allows an award of attorney's fees when the employer fails to timely pay medical expenses and/or authorize treatment. Although there is no limitation on the amount of attorney's fees which may be awarded, the award must be reasonable, and it will not be overturned absent manifest error. *Alexander [v. Autozone, Inc.*, 04-871 (La.App. 3 Cir. 12/8/04)], 889 So.2d 366. The reasonableness of an award of attorney's fees is determined from "the degree of skill and ability exercised, the amount of the claim, and the amount recovered for the plaintiff, and the amount of time devoted to the case." *Id.* at 378 (quoting *Semere v. Our Lady of Lourdes Hosp.*, 03-1702, p. 14 (La.App. 3 Cir. 6/29/04), 875 So.2d 1048, 1057.)

Because PAI did not timely authorize treatment, an award of attorney fees is proper under La.R.S. 23:1201(F). Further, the fee is reasonable in light of our view of the record. Accordingly, we find that the workers' compensation judge did not abuse her discretion in awarding $7,000.00 in attorney fees. *Jackson v. Christus Health Cent. La.*, 05-983 (La.App. 3 Cir. 2/1/06), 922 So.2d 748. This assignment has no merit.

*Answer to Appeal*

Frederick answered the appeal seeking additional attorney fees for work performed on appeal. Accordingly, we award $2,500.00 for work on this appeal.

**DECREE**

For the foregoing reasons, the ruling of the workers' compensation judge is affirmed. Additional attorney fees for work performed on appeal in the amount of $2,500.00 are awarded to Frederick. All costs of this appeal are assessed against the defendant, Port Aggregates, Inc.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**